UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Teamsters Local No. 120, affiliated with the International Brotherhood of Teamsters; Richard J. Bacon, II and his spouse, Saundra Bacon, and their dependent child; Nicole L. Bauler, and her spouse, Jeffrey Bauler; Christopher J. Riley, and his spouse, Diane Riley, and their three dependent children; Joseph A. Riley, and Julie Riley, his spouse; and Kenneth J. Schwebach, and his spouse, Pamela Schwebach; and all similarly situated Marathon Petroleum Company LLC employees, | Civ. No. 06-3431 (PAM/JSM) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND AMENDED ORDER** |
| Marathon Petroleum Company LLC; Marathon Ashland Petroleum LLC ("MAP") Health Plan; R.P. Nichols (and his successors, if any), as the Plan Administrator and Plan Fiduciary; and G.L. Peiffer, R.R. Young, and R.K. Lohoff (and their successors, if any) as Plan Fiduciaries, | |
| Defendants. | |

This matter is before the Court on Plaintiffs' Motion for a Temporary Restraining

Order ("TRO"). On August 23, 2006, the Court held a hearing on the Motion, and because

of the parties' need for an immediate decision, the Court issued a summary Order granting

the Motion. The Court also advised the parties that this Memorandum and Amended Order

would follow, setting forth the specific bases for the Court's decision. The Court further explained that good cause existed to extend the TRO until September 18, 2006, when the Court would hear Plaintiffs' motion for a preliminary injunction, because the undersigned Judge would be out of the country.

**BACKGROUND**

This is a putative class action brought by employees of Defendant Marathon Petroleum Company LLC ("Marathon"), and their bargaining representative, Teamsters Local No. 120 ("Teamsters"), against Defendants Marathon, the Marathon Petroleum Company Health Plan ("Plan"), and the Plan's Administrator and Trustees. Plaintiffs sue for declaratory and injunctive relief under the Employee Retirement Income Security Act of 1974 (ERISA) in connection with the administration of the Plan.

Marathon offers health and dental insurance coverage for its employees under the Plan, which is described in a Summary Plan Description (SPD). The SPD states that Marathon pays approximately eighty percent of the premium amounts, and the employees are responsible for the other twenty percent. The SPD also details certain rights in the event an employee loses coverage under the Plan:

> If an **Employee Member** of the Plan loses coverage:
> * because of termination of employment (including retirement), either voluntary or involuntary, for reasons other than gross misconduct, or
> * because of a reduction of work hours . . .
> then the member and currently covered eligible dependents will be entitled to elect continuation of coverage for a maximum of 18 months from the date of the qualifying event.

(SPD at 88.)

2

Teamsters and Marathon have been parties to a series of labor agreements over the course of several years. The most recent collective bargaining agreement (CBA) between Plaintiffs and Marathon expired on May 31, 2006, and the Plaintiff employees went on strike on July 20, 2006. On July 24, 2006, Marathon sent letters to the striking employees, notifying them that Marathon would cease paying its portion of their health and dental insurance premiums, beginning that day. A week later, on July 31, 2006, Marathon demanded that the employees pay the full premium amount by August 7, 2006, or their coverage would be terminated. Marathon told employees on August 11, 2006, that if they did not pay or waive coverage by August 24, 2006, Marathon would cancel their insurance coverage retroactively to July 24, 2006. Marathon further stated that the Consolidated Omnibus Budget Reconciliation Act (COBRA) was not applicable, characterizing the threatened cancellation of coverage as merely "adjusted premiums." Marathon failed to send any letters or notices to the striking employees' dependent spouses and children.

In the Complaint, Plaintiffs contend that Defendants violated numerous provisions of ERISA and COBRA. Plaintiffs seek a TRO to prevent Defendants from terminating Plaintiffs' health coverage under the Plan. As grounds for the Motion, Plaintiffs argue specifically that Defendants unlawfully threatened them with loss of insurance coverage; failed to notify them of COBRA rights; deprived them of statutory time periods to elect and pay for continuation coverage; conditioned the right to continuation coverage on immediate payment; failed to separately notify dependent spouses and children of COBRA rights; and eliminated required guarantees on the duration, cost, and content of coverage. In response,

Defendants challenge the Court's jurisdiction, contend that the matter is preempted by federal labor law, and deny that Plaintiffs are entitled to COBRA rights.

**DISCUSSION**

**A.    Jurisdiction**

Federal district courts have exclusive jurisdiction over ERISA actions.  29 U.S.C. § 1132(e)(1).  In addition, federal courts have federal question jurisdiction over ERISA and COBRA claims under 28 U.S.C. § 1331.  Thus, the Court has subject matter jurisdiction in this action.

Nevertheless, Defendants contend that the SPD and the Plan are part of the CBA, thereby bringing any issue arising under the SPD or the Plan under the jurisdiction of the National Labor Relations Board (NLRB).  This argument is easily quelled by the simple reason that the terms of the CBA do not incorporate the Plan or the SPD.  (See CBA Art. 10.) The Plan and the SPD are completely separate documents from the CBA.

Defendants also submit that the anti-injunction provision of the Norris-LaGuardia Act, 29 U.S.C. § 101, precludes this Court's jurisdiction to issue a TRO.

> No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101.  However, an employer's failure to comply with ERISA "is not the type of 'labor dispute' to which the Act is aimed." Mamula v. Satralloy, Inc., 578 F. Supp. 563, 575 (D. Ohio 1983) (discussing an employer's failure to make health insurance premium

4

payments) (citations omitted); <u>see also</u> <u>UAW v. White Farm Equip. Co.</u>, Civ. No. 4-84-770, 1984 WL 4605, at *3 (D. Minn. Oct. 19, 1984) (Murphy, J.) ("An order directing an employer to comply with contractual agreements to provide insurance coverage . . . is not the type of injunction contemplated by the Act."); <u>Sheet Metal Workers' Int'l Ass'n Local 206 v. W. Coast Sheet Metal Co.</u>, 660 F. Supp. 1500, 1505 (S.D. Cal. 1987) (finding jurisdiction to issue injunctive relief under ERISA because "[t]he protection of a fledgling union, which is the goal of the Norris-LaGuardia Act, is clearly not an issue."). Moreover, the Norris-LaGuardia Act lists specific activities that a court cannot enjoin, and refusing to pay health insurance premiums is not included in the listed activities. <u>See</u> 29 U.S.C. § 104; <u>White Farm Equip. Co.</u>, 1984 WL 4605, at *3. Thus, the Norris-LaGuardia Act does not divest the Court of jurisdiction.

## B.    Preemption

Defendants argue that this matter is preempted by federal labor law because their alleged activities are subject to § 7 or § 8 of the National Labor Relations Act (NLRA). They point out that Plaintiffs have filed an unfair labor practice charge before the NLRB, asserting that Defendants are threatening striking workers with loss of insurance coverage. Defendants contend that the administrative charge preempts this Court's jurisdiction.

In <u>Lupiani v. Wal-Mart Stores, Inc.</u>, 435 F.3d 842 (8th Cir. 2006), the plaintiff employees filed a charge against their employer with the NLRB, resulting in an administrative hearing and decision. <u>Id.</u> at 844. During the administrative proceedings, the plaintiffs also filed ERISA charges in federal district court, based on the same conduct. <u>Id.</u>

at 845. The <u>Lupiani</u> court discussed why <u>San Diego Building Trades Council v. Garmon</u>, 359 U.S. 236, 245 (1959), on which Defendants chiefly rely, was not applicable in such circumstances. In <u>Garmon</u>, the Supreme Court held that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. at 245. The Eighth Circuit noted in <u>Lupiani</u> that <u>Garmon</u> derived its rationale from the Supremacy Clause of the United States Constitution, and that <u>Garmon</u> was principally concerned with a conflict between state law and federal labor law. <u>Lupiani</u>, 435 F.3d at 846 (citations omitted). The <u>Lupiani</u> court noted, without deciding, that "it is questionable whether the <u>Garmon</u> doctrine is implicated where any potential conflict is between ERISA and the [NLRA]." <u>Id.</u> The court did not need to answer the question because the ERISA claim was not "inextricably intertwined" with the NLRA. <u>Id.</u> In deciding this, the court specifically considered whether it would have to rely on substantive labor law to answer the question. <u>Id.</u>

In the case at hand, the Court may decide Plaintiffs' COBRA and ERISA claims without any regard to the NLRA. Plaintiffs are alleging that Defendants' letters sent on July 24, July 31, and August 7, 2006, violated notice provisions contained in 29 U.S.C. §§ 1161 and 1166; that Defendants deprived the Plaintiff employees of their sixty-day election period under 29 U.S.C. § 1166; that Defendants failed to give the Plaintiff employees a forty-five day payment period following their election; that Defendants did not provide independent election rights to dependent spouses and children as required by 29 U.S.C. §§ 1162, 1163,

6

1166, and 1167; and that Defendants eliminated the mandatory rights of coverage duration, premium cost limitation, and coverage content. These alleged ERISA and COBRA violations exist completely independently from the unfair labor practice charge, which accuses Marathon of violating its statutory duty to bargain in good faith. Consequently, the Court's jurisdiction is not preempted by the NLRA.

The Court further finds Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 543 (1988), inapposite to the present case. In that case, the Supreme Court held that ERISA did not confer jurisdiction on a federal district court to determine whether an employer's action violated § 8(a)(5) of the NLRA. Id. at 542-43. There, the plaintiffs were attempting to use ERISA as a means to have the court decide a direct issue of labor law: whether the defendant employer violated the NLRA's duty to bargain in good faith. Here, on the other hand, Plaintiffs do not seek to have the Court decide matters within the purview of the NLRA; they are suing for substantive rights guaranteed them by ERISA and COBRA. That Defendants' actions may also violate the NLRA is of no moment. The Court need not look to the NLRA to decide Plaintiffs' claims.

**C.    The Merits of the TRO Motion**

A TRO may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the TRO. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is considered to be an extraordinary remedy that is not to be routinely granted. Watkins

Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citation omitted).  Thus, the party seeking injunctive relief bears the burden of proving all four Dataphase factors.

       1.      Likelihood of Success on the Merits

Defendants argue that although the work stoppage resulted in a reduction in the Plaintiff employees' work hours, there was no loss of insurance coverage.  According to Defendants, COBRA consequently does not apply.  Therefore, the Court must first determine whether Plaintiffs may invoke the protections of COBRA.

COBRA amended ERISA to provide employees who had been covered by an employment-related insurance plan with the opportunity to elect continuing coverage under the plan when a "qualifying event" occurs.  See 29 U.S.C. § 1161(a); Geissal v. Moore Med. Corp., 524 U.S. 74, 76 (1998).  One such qualifying event is a reduction in hours.  29 U.S.C. § 1163.

The Plaintiff employees were working forty hours a week before the strike; now, they are not.  The Plaintiff employees therefore experienced a reduction in hours when they went on strike.  See Commc'n Workers of Am. v. NYNEX Corp., 898 F.2d 887, 888 (2d Cir. 1990).  Because of the reduction in hours due to the strike, Marathon stopped paying its portion of the insurance premiums and threatened to cancel the employees' insurance coverage retroactive to July 24, 2006.  These actions would clearly cause a loss in coverage.  Moreover, Plaintiffs' evidence shows that coverage was actually canceled for at least one individual.  Plaintiff Nicole Bauler's pharmacist told her that her medical insurance had expired, which resulted in her having to pay full price for her prescriptions.  Because

8

Marathon's cessation of premium payments has already caused, or would cause, a loss in coverage, the protections of COBRA apply.

This finding is supported by language found elsewhere in COBRA, which provides that continuation coverage will end "by reason of a failure to make timely payment of any premium," 29 U.S.C. § 1162(2)(C). If continuation coverage is lost by an employee's failure to make a premium payment, it logically follows that regular coverage is lost when an employer fails to make a premium payment. Similarly, Marathon's SPD provides that coverage ends when an employee fails to pay his or her part of the premium. It stands to reason that coverage also ends when Marathon ceases to pay its share. Lastly, one of Defendants' own cases indicates that COBRA is triggered when an employer ceases making health care coverage contributions. See Cooper v. TWA Airlines, LLC, 274 F. Supp. 2d 231, 240 (E.D.N.Y. 2003) ("Thereafter, plaintiffs have the right, pursuant to the provisions of [COBRA] to continue group rate coverage under the health benefit plan for an additional seventeen months.").

Possibly anticipating the inevitable conclusion that the Plaintiff employees are entitled to COBRA rights, Defendants direct the Court to language in the actual Plan, which provides that in the event of a work stoppage due to a strike, the employee may continue to participate in the Plan by paying 100 percent of the premiums by an arbitrary date to be set by Marathon. Although this language does not conflict with COBRA on its face, it does as Marathon seeks to apply it. The Court does not dispute that Defendants may require the Plaintiff employees

to pay 100 percent of the premiums in order to continue participation in the Plan during a strike. However, in imposing this obligation, Defendants must comply with COBRA.

Having found that the Plaintiff employees are entitled to COBRA rights, the Court now turns to the question of whether Plaintiffs have shown a strong likelihood of success on the merits. Defendants do not even feign compliance with COBRA. First, Defendants did not give proper notice to the Plaintiff employees of their rights to elect continuation coverage, as required by 29 U.S.C. § 1166. Second, although COBRA allows a sixty-day period to elect continuation coverage, see 29 U.S.C. § 1165(a)(1), Defendants demanded that the elections be made within thirty days. Third, the Plaintiff employees were entitled to an additional forty-five days after the election to pay the new premium amounts under 29 U.S.C. § 1162(3), but Defendants demanded payment simultaneously with the election. Fourth, COBRA permits each qualified beneficiary, such as spouses and dependent children, a separate opportunity to elect continuation coverage, see 29 U.S.C. §§ 1161(a), 1165(a)(2), 1167(3), but Defendants did not permit qualified beneficiaries such an opportunity. Fifth, Defendants' offer of coverage did not refer to COBRA's requirements that continuation coverage would be available for a specific period of time, for a specific price not to exceed 102 percent of the actual cost, and with no proof of insurability. See 29 U.S.C. § 1162(2)(A)(i), (3), (4). Not only did Defendants fail to comply with COBRA in these respects, but they also did not comply with the SPD, which mirrors COBRA's notice and election requirements. In sum, Plaintiffs have shown a strong likelihood of success on the merits of their claims.

2.    Threat of Irreparable Harm

The mere threat of termination of medical benefits to striking workers constitutes irreparable injury. NYNEX Corp., 898 F.2d at 891 (citation omitted). Similarly, the termination of health insurance benefits of individuals on fixed incomes presents a sufficient threat of irreparable harm to warrant injunctive relief. See White Farm Equip. Co., 1984 WL 4605, at *4. Here, Plaintiffs have persuasively detailed the financial and medical circumstances of several Plaintiff employees and their family members who would be irreparably harmed if their health insurance coverage is terminated. The striking employees are receiving only strike pay at this time. Some Plaintiff employees and their dependents have already been forced to forgo medical treatment due to lack of insurance coverage, and have been denied medical care unless they paid out-of-pocket for medicines or procedures. Monetary damages are insufficient to compensate for having to forgo medical care or being denied such care. See United Steelworkers of Am. v. U.S. Steel Corp., Civ. No. 5-77-76, 1977 WL 1720, at *6 (D. Minn. Sept. 2, 1977) (Lord, J.). Plaintiffs have satisfactorily shown a threat of irreparable harm absent a TRO.

3.    Balance of Harms

The balance-of-harms factor requires a comparison of the damage Defendants would suffer if the Motion is granted with the injury to Plaintiffs if their request is denied. See Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1094 (D. Minn. 1981) (MacLaughlin, J.). The harm to the Plaintiff employees and their families is the risk to their health, whereas

Defendants will incur only minimal financial risk. The Court consequently finds that the balance of harms weighs in Plaintiffs' favor.

    4.   <u>Public Interest</u>

There is a strong public interest in preventing employers from discontinuing workers' health insurance coverage in violation of ERISA, COBRA, and health care plans. Congress enacted COBRA to provide uninterrupted health insurance, in the event of an unexpected change in employment status, to reflect its concern "with reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay." H.R. Rep. No. 99-241, pt. 1, at 44 (1986), <u>reprinted in</u> 1986 U.S.C.C.A.N. 42, 622.

Further, paramount to the Court's consideration of the public interest factor is the danger Defendants' actions pose to the Plaintiff employees' dependent spouses and children. In order to advance their own bargaining position, Defendants would have deprived Marathon employees' children and family members of the modern-day necessity of health care, without notice. Considering the congressional intent behind COBRA and the specific facts of this case, the public interest is far better served by issuing the TRO than denying it.

**D.    Security for the TRO**

Federal Rule of Civil Procedure 65 provides that no TRO "shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). While Defendants requested

a "substantial" bond, they did not specify an amount. Based on the number of striking employees and Plaintiffs' likelihood of success on the merits, the Court orders Plaintiffs to pay $20,000 as security for any costs or damages Defendants may incur.

**CONCLUSION**

The Court has subject matter jurisdiction in this case, and the NLRA does not preempt this Court from adjudicating Plaintiffs' ERISA claims. After weighing all the <u>Dataphase</u> factors, the Court finds that a TRO is warranted. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiffs' Motion for a Temporary Restraining Order (Docket No. 2) is **GRANTED**;

2.  Defendants are restrained from threatening to discontinue and from discontinuing the coverage under the Marathon Ashland Petroleum LLC Health Plan, as such coverage was in effect prior to July 24, 2006, for all Marathon Petroleum Company LLC employees who are members of the Teamsters Local No. 120 bargaining unit at Marathon and their dependents;

3.  Defendants are further restrained from failing or refusing to follow ERISA's and COBRA's requirements to extend individual and family continuation coverage to these employees and their dependents;

4.  Plaintiffs shall pay $20,000 as security for the TRO; and

5.     This Order will remain in effect until the Court hears and decides Plaintiffs'

motion for a preliminary injunction on September 18, 2006, at 9:00 a.m.


Dated:   __August 29, 2006_____

                                        s/Paul A. Magnuson_____
                                        Paul A. Magnuson
                                        United States District Court Judge